UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| THOMAS PRICE, Individually and on Behalf of All Others Similarly Situated, | § § § | |
| Plaintiff, | § § | Civil Action No. 4:17-cv-2367 |
| | § | JURY TRIAL DEMAND |
| v. | § § | |
| PARKWAY, INC., JAMES R. HEISTAND, JAMES A. THOMAS, R. DARY STONE, CRAIG B. JONES, FRANK J. JOHNSON, JAMES H. HANCE, and AVI BANYASZ, | § § § § § | |
| Defendants. | § § | |

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF
SECURITIES EXCHANGE ACT**

Plaintiff Thomas Price ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1.    This action is brought as a class action by Plaintiff on behalf of himself and the other public holders of the common stock of Parkway, Inc. ("Parkway" or the "Company") against the Company and the members of the Company's board of directors (collectively, the "Board" or "Individual Defendants," and, together with Parkway, "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), SEC Rule 14a-9, 17 C.F.R. 240.14a-9, and Regulation G, 17 C.F.R. § 244.100 in connection with the proposed merger (the "Proposed Merger") between Parkway and affiliates of Canada Pension Plan Investment Board ("CPPIB").

2.      On June 29, 2017, the Board caused the Company to enter into an agreement and plan of merger ("Merger Agreement"), pursuant to which the Company's shareholders stand to receive $23.05, $4.00 of which will be paid as a "special dividend," in cash for each share of Parkway stock they own (the "Merger Consideration"), which represents a ***discount of 12%*** to the Company's 52-week high of $26.20.

3.      On July 27, 2017, in order to convince Parkway shareholders to vote in favor of the Proposed Merger, the Board authorized the filing of a materially incomplete and misleading Preliminary Proxy Statement on a Schedule 14A (the "Proxy") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      While Defendants are touting the fairness of the Merger Consideration to the Company's shareholders in the Proxy, they have failed to disclose certain material information that is necessary for shareholders to properly assess the fairness of the Proposed Merger, thereby violating SEC rules and regulations and rendering certain statements in the Proxy materially incomplete and misleading.

5.      In particular, the Proxy contains materially incomplete and misleading information concerning: (i) the financial projections for the Company that were relied upon by the Board in recommending the Company's shareholders vote in favor of the merger; and (ii) the valuation analyses performed by Parkway's financial advisor, HFF Securities L.P. ("HFF"), in support of its fairness opinion.

6.      It is imperative that the material information which has been omitted from the Proxy is disclosed prior to the forthcoming stockholder vote in order to allow the Company's stockholders to make an informed decision regarding the Proposed Merger.

7.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 and Regulation G, 17 C.F.R. § 244.100.   Plaintiff seeks to enjoin Defendants from holding the stockholders' vote on the Proposed Merger and taking any steps to consummate the Proposed Merger unless, and until, the material information discussed below is disclosed to Parkway stockholders sufficiently in advance of the vote on the Proposed Merger or, in the event the Proposed Merger is consummated, to recover damages resulting from Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

9.      Personal jurisdiction exists over each Defendant either because Defendant conducts business or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

10.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; and (ii) Parkway maintains its principal executive offices in this District.

## PARTIES

11.     Plaintiff is, and at all relevant times has been, a holder of Parkway common stock.

12.     Defendant Parkway is incorporated in Maryland and maintains its principal

executive offices at 5847 San Felipe Street, Suite 2200, Houston, Texas, 77057. The Company's common stock trades on the NYSE under the ticker symbol "PKY."

13.     Individual Defendant James R. Heistand ("Heistand") has served as a director of the Company since 2016.

14.     Individual Defendant James A. Thomas ("Thomas") has served as a director of the Company since 2016.

15.     Individual Defendant R. Dary Stone ("Stone") has served as a director of the Company since 2016.

16.     Individual Defendant Craig B. Jones ("Jones") has served as a director of the Company since 2016.

17.     Individual Defendant Frank J. Johnson ("Johnson") has served as a director of the Company since 2016.

18.     Individual Defendant James H. Hance ("Hance") has served as a director of the Company since 2016.

19.     Individual Defendant Avi Banyasz ("Banyasz") has served as a director of the Company since 2016.

20.     The Board and Parkway may collectively be referred to as "Defendants."

## CLASS ACTION ALLEGATIONS

21.     Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public shareholders of Parkway (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

22.     This action is properly maintainable as a class action because:

a.      The Class is so numerous that joinder of all members is impracticable.  As of June 30, 2017, there were approximately 49,220,914 shares of Parkway common stock outstanding, held by hundreds of individuals and entities scattered throughout the country.  The actual number of public shareholders of Parkway will be ascertained through discovery;

b.      There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

i)      whether Defendants have misrepresented or omitted material information concerning the Proposed Merger in the Proxy in violation of Section 14(a) of the Exchange Act;

ii)      whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

iii)      whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the Proposed Merger based on the materially incomplete and misleading Proxy.

c.      Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d.      Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.      The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members

of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

       f.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

       g.     A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

### I.    The Proposed Merger

23.    Parkway is a self-managed real estate investment trust (REIT).  The Company owns and operates office properties located in submarkets in Houston, Texas.   As of December 31, 2016, the Company's portfolio consisted of five Class A assets comprising 19 buildings and totaling approximately 8.7 million rentable square feet in the Greenway, Galleria, and Westchase submarkets of Houston.  In addition, the Company operates a fee-based real estate service (the Third-Party Services Business) through a subsidiary, Eola Office Partners, LLC and its subsidiaries (collectively, Eola), which in total managed approximately 3.8 million square feet (unaudited) for primarily third-party owners, as of December 31, 2016.  The Company's properties include CityWestPlace, San Felipe Plaza, Phoenix Tower, Greenway Plaza, and Post Oak Central.[1]

24.    On June 30, 2017, Parkway issued a press release announcing the Proposed Merger, which states in pertinent part:

> TORONTO and HOUSTON, Texas, June 30, 2017 /PRNewswire/-- Canada Pension Plan Investment Board ("CPPIB") and Parkway, Inc. (NYSE: PKY)

---

[1] http://www.reuters.com/finance/stocks/companyProfile?symbol=PKY.N.

("Parkway") announced today that they have entered into a definitive agreement under which CPPIB will acquire 100% of Parkway, a Houston-based real estate investment trust, for US$1.2 billion, or US$23.05 per share. The transaction is not subject to a financing condition and is expected to close in the fourth quarter of 2017, subject to customary closing conditions, including approval by Parkway's stockholders.

The US$23.05 per share consideration, which consists of $19.05 per share plus a $4.00 special dividend to be paid prior to closing, represents a premium of approximately 14.3% when compared to Parkway's 30-day volume weighted average price ended June 29, 2017 and a premium of approximately 13.1% when compared to the prior closing price. Parkway's board of directors unanimously approved the agreement. TPG Capital and its affiliates, which collectively own approximately 9.8% of the outstanding common stock of Parkway, have agreed to vote in favor of the transaction. Parkway will pay its previously announced second quarter dividend on June 30, 2017, but will suspend all future quarterly dividend payments through the expected close of the transaction.

"Parkway fits well with CPPIB's long-term real estate strategy to hold stable, high-quality assets in large U.S. markets," said Hilary Spann, Managing Director, Head of U.S. Real Estate Investments, CPPIB. "Through this investment, CPPIB gains additional scale in Houston."

Parkway owns the largest office portfolio in Houston, totaling approximately 8.7 million square feet across 19 properties. Located in the desirable areas of Westchase, Greenway and Galleria, the high-quality office properties are 87.6% leased as of March 31, 2017, and anchored by a broad mix of strong tenants in financial services, technology and commodities businesses.

"CPPIB shares our view of the long-term resiliency of the Houston market, and we believe this transaction demonstrates our commitment to enhancing stockholder value," stated James R. Heistand, Parkway's President and Chief Executive Officer. "We believe there are still some near-term headwinds in the office sector for Houston, but the implied asset valuation of this transaction shows CPPIB's appreciation for the high-quality portfolio we have assembled and the near-term stability it provides during the current downturn in the market."

25.     The Merger Consideration appears inadequate in light of the Company's recent financial performance and prospects for future growth. For instance, Parkway's common stock was trading at a 52-week high of $26.60 per share in the beginning of October 2016. Moreover, the Company reported net income growth of 31.53% and 9.88% in fiscal years 2015 and 2016, respectively.

26.     The Company's President and CEO, Individual Defendant Heistad, was also optimistic about Parkway's future performance and reported on May 8, 2017:  "Parkway's first quarter performance is a result of hard work from our leasing and operations team during a challenging time in the Houston market.  Houston office fundamentals remain under significant pressure, but we are using our operational expertise and efficiencies within our portfolio to improve leasing velocity and retain as many tenants as possible at reasonable economics.  We also completed the previously announced sale of a 49% interest in Greenway Plaza and Phoenix Tower, which helps to mitigate risk in a large asset while providing proceeds that can be used to strengthen our balance sheet and pursue opportunities that we believe will be accretive for our stockholders."

27.     In sum, it appears that Parkway is well-positioned for financial growth, and that the Merger Consideration fails to adequately compensate the Company's shareholders.  It is imperative that Defendants disclose the material information they have omitted from the Proxy, discussed in detail below, so that the Company's shareholders can properly assess the fairness of the Merger Consideration for themselves and make an informed decision concerning whether or not to vote in favor of the Proposed Merger.

## II.     The Materially Incomplete and Misleading Proxy

28.     On July 27, 2017, Defendants caused the Proxy to be filed with the SEC in connection with the Proposed Merger.  The Proxy solicits the Company's shareholders to vote in favor of the Proposed Merger.  Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents and/or omits material information that is necessary for the Company's shareholders to make an

informed decision concerning whether to vote in favor of the Proposed Merger, in violation of Sections 14(a) and 20(a) of the Exchange Act.

29.     The Proxy fails to provide material information concerning the Company's financial projections, which were developed by the Company's management and relied upon by the Board in recommending that the shareholders vote in favor of the Proposed Merger. Proxy, 40-41. The financial projections were also relied upon by the Company's financial advisor, HFF, in rendering its fairness opinion. Proxy, 43.

30.     Specifically, the Proxy provides values for non-GAAP (generally accepted accounting principles) financial metrics Cash Net Operating Income ("NOI"), Adjusted EBITDA, and Funds from Operations ("FFO"), but fails to provide (i) line item projections for the metrics used to calculate these non-GAAP measures, or (ii) a reconciliation of the non-GAAP projections to the most comparable GAAP measures.

31.     First, the Proxy defines Cash NOI as income from office properties less property operating expenses yet fails to provide the values of the underlying line items: (i) income from office properties and (ii) property operating expenses. Proxy, 53.

32.     Second, the Proxy defines Adjusted EBITDA as net income before interest expense, income taxes and depreciation and amortization expense, share-based compensation expense, impairment of real estate, gains and losses on sales of real estate and transaction and acquisition costs. However, the Proxy fails to disclose the values of the underlying line items: (i) net income; (ii) interest expense, (iii) income taxes, (iv) depreciation and amortization expense, (v) share-based compensation expense, (vi) impairment of real estate, (vi) gains and losses on sales of real estate, and (vii) transaction and acquisition costs. Proxy, 53.

33.    Third, the Proxy defines FFO as net income (computed in accordance with GAAP), reduced by preferred dividends, excluding gains or losses from the sale of previously depreciable real estate assets, impairment charges related to depreciable real estate under GAAP, plus depreciation and amortization related to depreciable real estate but fails to disclose the underlying line items:  (i) net income, (ii) preferred dividends, (iii) gains or losses from the sale of previously depreciable real estate assets, (iv) impairment charges related to depreciable real estate, and (v) depreciation and amortization related to depreciable real estate.  Proxy, 53.

34.    Finally, as more fully described below, the Board's projections included unlevered, after-tax free cash flows which HFF utilized in its Discounted Cash Flow Analysis. However, the Proxy fails to define, disclose, or provide a GAAP reconciliation for unlevered, after-tax free cash flows.  Proxy, 46.  The omission of this information further renders the Proxy materially misleading, as the value of unlevered, after-tax free cash flows: (i) was provided to HFF by the Board and (ii) played a central role in HFF's DCF Analysis and consequently its fairness opinion.

35.    When a company discloses non-GAAP financial measures in a Proxy, the Company must also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP.  17 C.F.R. § 244.100.

36.    Indeed, the SEC has recently increased its scrutiny of the use of non-GAAP financial measures in communications with shareholders.  Former SEC Chairwoman Mary Jo White has stated that the frequent use by publicly traded companies of unique company-specific

non-GAAP financial measures (as Parkway included in the Proxy here), implicates the centerpiece of the SEC's disclosures regime:

> In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors, crowding out and effectively supplanting the GAAP presentation.  Jim Schnurr, our Chief Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors. And last month, the staff issued guidance addressing a number of troublesome practices *which can make non-GAAP disclosures misleading*: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data.  I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.  I also urge again, as I did last December, that appropriate controls be considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures.[2]

37.    The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading and has, therefore, heightened its scrutiny of the use of such projections.[3]  Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[4]  One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

---

[2]  Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html.

[3]  *See, e.g.*, Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures:  The SEC's Evolving Views*, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/; Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into Profits*, N.Y. Times, Apr. 22, 2016, http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0.

[4]  *Non-GAAP Financial Measures, Compliance & Disclosure Interpretations*, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

38.    In order to make the projections for Parkway included on page 53 of the Proxy materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

39.    At the very least, the Company must disclose the line item projections for the financial metrics that were used to calculate the aforementioned non-GAAP measures.  Such projections are necessary to make the non-GAAP projections included in the Proxy not misleading.  Indeed, Defendants acknowledge the misleading nature of non-GAAP projections as Parkway stockholders are cautioned that "[t]he prospective financial information requires significant estimates and assumptions that make it inherently less comparable to the similarly titled GAAP measures in Parkway's historical GAAP financial statements."  Proxy, 52.

40.    Moreover, the financial projections at issue were relied upon by the Company's financial advisor, HFF, in connection with its valuation analyses.  Proxy, 43.  The opacity concerning the Company's internal projections renders the information set forth on page 53 of the Proxy materially incomplete and misleading, particularly as companies formulate non-GAAP metrics differently.  Once a proxy discloses internal projections relied upon by the board, those projections must be complete and accurate.

41.    Clearly, shareholders would find this information material since the Board's unanimous recommendation that shareholders vote in favor the Proposed Merger was based, in part, on the following:

- [The] Board of Directors' knowledge of the business, operations, financial condition, earnings and prospects of the Company, as well as its knowledge of the current and prospective environment in which the Company operates, including economic and market conditions[.]

- [The] Board of Directors' belief, following a review of possible strategic alternatives to the Mergers and having consulted with management and the Company's financial advisors regarding the

> possible strategic alternatives, that the Mergers are more favorable
> to the Company's stockholders than other strategic alternatives
> available to the Company, including remaining an independent
> public company[.]

Proxy, 40.

42.    The Proxy also omits certain key inputs necessary for shareholders to assess the

valuation analyses performed by HFF in support of its fairness opinion, rendering the summaries

of such analyses in the Proxy incomplete and misleading.

43.    As to HFF's Net Asset Value Analysis (the "NAV"), the Proxy references

numerous undisclosed financial projections relied upon by HFF to calculate an implied per share

equity value reference range.  Specifically, the Proxy states that HFF's NAV calculation utilized:

(i) Parkway's total implied gross real estate value at share, (ii) Parkway's estimated cash and

cash equivalents, (iii) restricted cash, (iv) rent and other receivables, (v) other tangible assets as

of September 30, 2017, as estimated by Parkway's management, (vi) Parkway's outstanding

liabilities, as estimated by Parkway's management, including indebtedness under Parkway's

mortgage debt (taking into account the pro rata share of mortgage debt from the Greenway

Properties joint venture), the liquidation preference of preferred units of Parkway Properties LP,

marked-to-market debt adjustments, other tangible liabilities, and transaction-related expenses

and costs.  Proxy, 46.

44.    However, the Proxy fails to disclose the aforementioned line items, which HFF

used to adjust to adjust the Company's net operating income and cash flows in its NAV

Analysis, providing only the bald values for the implied per share equity value reference range.

45.    Similarly, with respect to HFF's Discounted Cash Flow Analysis (the "DCF"), the

Proxy states that HFF utilized the non-GAAP metric of unlevered, after-tax free cash flows when

conducting its DCF Analysis and the resultant implied per share equity value reference range.

Proxy, 46.  However, the Proxy fails to disclose, define or reconcile the unlevered, after-tax free cash flows utilized by HFF in its DCF analysis.

46.    These key inputs are material to Parkway shareholders, and their omission renders the summaries of HFF's valuation analyses incomplete and misleading.  As a highly respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow analysis, a banker takes management's forecasts and then makes several key choices, "each of which can significantly affect the final valuation."  Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the terminal value…" *Id*.  As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value.  For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….  This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques.  This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion <u>unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices</u>.  The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness.  This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78.

47.    Lastly, the Proxy states that the Company entered into confidentiality agreements with CPPIB and potential acquirer Party A between May and June 2017, which "included customary standstill and non-solicit covenants."  Proxy, 33-34.  Descriptions concerning the material terms of these confidentiality agreements, however, are absent from the Proxy.  Notably, the Proxy fails to disclose whether the standstill provisions had "don't-ask-don't-waive" provisions and/or sunset provisions, or whether potential bidders could seek a waiver of

such standstills to make an unsolicited offer to acquire the Company.  The omission of this information leaves shareholders guessing whether a superior offer is precluded from the Company's consideration.

48.    In sum, the omission of the above-referenced information renders statements in the Proxy materially incomplete and misleading, in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the special shareholder meeting to vote on the Proposed Merger, Plaintiff and the other members of the Class will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Merger, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### <u>COUNT I</u>

**Against All Defendants for Violations of Section 14(a) of the Exchange Act
and Rule 14a-9 and 17 C.F.R. § 244.100 Promulgated Thereunder**

49.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

50.    Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

51.    As set forth above, the Proxy omits information required by SEC Regulation G, 17 C.F.R. § 244.100, which violates Section 14(a).  SEC Regulation G has two requirements:

(1) a general disclosure requirement; and (2) a reconciliation requirement. The general disclosure requirement prohibits "mak[ing] public a non-GAAP financial measure that, taken together with the information accompanying that measure, contains an untrue statement of a material fact or *omits to state a material fact necessary in order to make the presentation of the non-GAAP financial measure…not misleading*." 17 C.F.R. § 244.100(b). The reconciliation requirement requires an issuer that chooses to disclose a non-GAAP measure to provide a presentation of the "most directly comparable" GAAP measure, and a reconciliation "by schedule or other clearly understandable method" of the non-GAAP measure to the "most directly comparable" GAAP measure. 17 C.F.R. § 244.100(a).

52. The omission of information from a proxy statement will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that Proxy communications with shareholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

53. Defendants have issued the Proxy with the intention of soliciting shareholder support for the Proposed Merger. Each Defendant reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things: (i) the financial projections for the Company; and (ii) the valuation analyses performed by HFF in support of its fairness opinion.

54. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants,

by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

55.    The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger.

56.    The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to review HFF's analyses in connection with their receipt of the fairness opinion, question HFF as to its derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

57.    The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately

involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

58.     Parkway is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

59.     The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Merger.

60.     Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### Against the Individual Defendants for Violations
### of Section 20(a) of the Exchange Act

61.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

62.     The Individual Defendants acted as controlling persons of Parkway within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Parkway, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

63.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

64.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Merger.  They were thus directly involved in preparing the Proxy.

65.    In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

66.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

67.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

68.    Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and relief as follows:

A.    Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B.    Enjoining Defendants and all persons acting in concert with them from proceeding with the shareholder vote on the Proposed Merger or consummating the Proposed Merger, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

C.    Directing Defendants to account to Plaintiff and the Class for all damages sustained as a result of their wrongdoing;

D.    Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses;

E.    Granting such other and further relief as this Court may deem just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

DATED:  August 2, 2017.

Respectfully submitted,


        */s/ Thomas E. Bilek*
Thomas E. Bilek
TX Bar No. 02313525 / SDTX Bar No. 9338
**THE BILEK LAW FIRM, L.L.P.**
700 Louisiana, Suite 3950
Houston, TX  77002

(713) 227-7720

*Attorneys for Plaintiff*

**OF COUNSEL:**

Nadeem Faruqi
James M. Wilson, Jr.
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY  10017
Telephone: (212) 983-9330
Email: nfaruqi@faruqilaw.com
        jwilson@faruqilaw.com